IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**SULUMON MACDANIEL MUHAMMAD,**

    Plaintiff,

v.

**COMMISSIONER OF SOCIAL SECURITY,**

    Defendant.

Civ. No. 3:17-cv-01639-CL

**OPINION & ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Sulumon Muhammad seeks judicial review of the final decision of the Commissioner of the Social Security Administrations denying his applications for supplemental security income under Title XVI of the Social Security Act. The parties have consented to magistrate jurisdiction over this action pursuant to 28 U.S.C. § 636(c)(1). For the reasons below, the Commissioner's decision is AFFIRMED.

## BACKGROUND

Plaintiff was born February 13, 1966 and has a 10th grade education. Tr. 46. Plaintiff has past work as an unskilled caregiver, ditch-digger, dishwasher, and fast-food cashier. Tr. 48-49, 68-70, 191, 489, 623. Plaintiff alleges disability due to chronic complete left anterior cruciate ligament (ACL) tear with severe left knee degenerative joint disease, bilateral foot neuropathy, bilateral first metatarsal degenerative joint disease, chronic hip strain, chronic low back pain, asthma, learning disorder, depression, anxiety disorder, and post-traumatic stress disorder (PTSD). Plf. Br. at 6 (#17). Plaintiff is addicted to alcohol and drugs, but claims to be disabled independent of substance use. Plf. Br. at 6-7.

Plaintiff filed a Title XVI application for supplemental security income on June 13, 2014, alleging disability beginning May 15, 2005. Tr. 17, 74. His application was initially denied on March 20, 2015, and upon reconsideration on November 3, 2015. Tr. 17. Thereafter, Plaintiff filed a written request for hearing. Plaintiff appeared and testified at a hearing held on March 15, 2017 before an administrative law judge (ALJ). At the hearing, Plaintiff's representative amended his alleged onset date to his protective filing date of June 13, 2014. Tr. 17. The ALJ issued an unfavorable decision on May 19, 2017. Tr. 17-38. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1-5, 7. Plaintiff now seeks judicial review.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

    a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the five-step analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since June 13, 2014, the application date. Tr. 19.

2. Plaintiff has the following severe impairments: degenerative joint disease of knees, affective disorder, an anxiety disorder and a learning disorder. Tr. 19.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. Tr. 21.

    a. Plaintiff has the RFC to perform modified light work as defined in 20 CFR 416.967(b). Plaintiff can lift and/or carry 20 pounds occasionally and 10 pounds frequently. Plaintiff can stand and/or walk for 2 hours in an 8-hour workday and sit for 8 hours in an 8-hour workday. Plaintiff can never climb ladders, ropes or scaffolds. He can occasionally kneel, crouch, crawl and climb ramps and stairs and frequently balance and stoop. Plaintiff is limited to simple repetitive tasks consistent with work at the SVP 1 or 2 levels and with GED levels not exceeding 2/2/2. Plaintiff can have no public contact and no more than superficial coworker contact. Tr. 22-23.

4. Plaintiff is unable to perform any past relevant work. Tr. 32.

5. Considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. Tr. 32.

Consequently, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. Tr. 33.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations

of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Where the evidence before the ALJ is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse an ALJ's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff argues the ALJ erred by 1) giving insufficient reasons to find borderline intellectual functioning, PTSD, and bilateral foot neuropathy not-severe impairments at step two of the analysis; 2) improperly rejecting Plaintiff's symptom testimony; 3) improperly discounting

medical opinion evidence; and 4) making an RFC determination that was not supported by the medical record. The Court disagrees.

I.     **The ALJ did not commit harmful error at step two.**

Plaintiff argues that the ALJ harmfully erred in failing to include borderline intellectual functioning, PTSD, and bilateral foot neuropathy as severe impairments at step two, and by failing to provide sufficient reasons to support his decision. The Court disagrees.

At step two of the sequential analysis, the ALJ must determine "whether the claimant has a medically severe impairment of combination of impairments." *See Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. § 404.1520(a)(4)(ii). A physical or mental impairment must be established by objective medical evidence from an acceptable medical source before the ALJ can determine whether the impairment or combination of impairments are severe. 20 C.F.R. § 416.921. A diagnosis, without more, is insufficient to establish a severe impairment. *See, e.g., Febach v. Colvin*, 580 Fed. Appx. 530, 531 (9th Cir. 2014) (finding a diagnosis of depression alone insufficient for finding a "severe" impairment). Rather, to establish a severe impairment, Plaintiff needed to demonstrate that his borderline intellectual functioning, PTSD, and bilateral foot neuropathy affected his ability to perform basic work activities during the relevant period. 20 C.F.R. § 416.922.

The ALJ considered Plaintiff's borderline intellectual functioning, PTSD, and bilateral foot neuropathy during step two and provided sufficient reasons for finding them not severe. Regarding Plaintiff's borderline intellectual functioning, the ALJ discussed this diagnosis and Plaintiff's IQ tests at length several times throughout his opinion to support his findings. *See* Tr. 19-20, 26-29. Despite Plaintiff's low IQ scores and diagnosis of borderline intellectual functioning, the record also included conflicting IQ scores from tests taken only about six

months apart, and in subsequent IQ testing Plaintiff was noted to give limited effort, seemed to make careless mistakes, and revealed no evidence of significant intellectual deficits. Tr. 27-29; Ex. 4A/8; Ex. 12F. Regarding Plaintiff's PTSD, the ALJ supported his finding that this impairment was not severe by citing to treatment notes where the treating doctor proffered the diagnosis with caution. Tr. 20. Regarding Plaintiff's bilateral foot neuropathy, the ALJ supported his findings by noting evidence of pain and swelling in the toes from 2014 and that gout or pre-diabetes was noted as a possible explanation, but that Plaintiff was never prescribed medication for these. Tr. 20. The ALJ also explained that these conditions, considered singly or in combination with others, caused only transient and mild symptoms and limitations, are well controlled with treatment, and did not persist for twelve continuous months. Tr. 21

Moreover, step two was decided in Plaintiff's favor by finding other impairments severe and the ALJ ultimately considered all of Plaintiff's alleged impairments when determining his RFC. For these reasons, Plaintiff has not proven that harmful error occurred at step two.

## II. The ALJ provided clear and convincing reasons to discount Plaintiff's subjective symptom testimony.

When deciding whether to accept the subjective symptom testimony of a claimant, the ALJ must perform a two-stage analysis. In the first stage, the claimant must produce objective medical evidence of one or more impairments which could reasonably be expected to produce some degree of symptom. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptom, but only to show that it could reasonably have caused some degree of the symptom. In the second stage of the analysis, the ALJ must assess the credibility of the claimant's testimony regarding the severity of the symptoms. *Id.* Unless there is affirmative evidence showing that the claimant is malingering, the ALJ's reasons for rejecting the claimant's

subjective testimony must be clear and convincing. *Burch*, 400 F.3d at 680. The ALJ may reject a claimant's allegations if his "statements at [his] hearing do not comport with the objective evidence in [his] medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). The ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Id.*; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). Additionally, the evidence upon which the ALJ relies must be substantial. *See Reddick*, 157 F.3d at 724; *Holohan v. Massinari*, 246 F.3d 1195, 1208 (9th Cir. 2001).

As agency policy requires, the ALJ compare Plaintiff's allegations to the medical evidence and treatment history and found Plaintiff's subjective symptom testimony to be "not entirely consistent" with the medical evidence and other evidence in the record. Tr. 24. Regarding Plaintiff's bilateral knee impairment and ACL tear, the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony as to the severity of this impairment by pointing to the fact that Plaintiff showed no signs of undergoing repair surgery nor was surgery recommended. Tr. 24. When asked about possible knee repair surgery at the hearing, Plaintiff said that he was told by Dr. Earl at Legacy that he was going to need a left knee replacement and that he should not get any more cortisone injections. However, the ALJ correctly pointed out that no such Legacy medical records exist in the record. Tr. 24. Similarly, Plaintiff claimed he had a re-evaluation at Providence Orthopedic and was told he was too young for a knee replacement. Tr. 25. Again, there are no treatment notes indicating such.

Plaintiff argues that the ALJ had a duty to develop the record further and obtain the alleged treatment records from Legacy and Providence Orthopedic or leave the record open and allow Plaintiff to do so. However, this argument does not support a finding of harmful error because the ALJ's duty to develop the record cannot be used to shift the burden of proof to the

ALJ. *See Mayes v. Massanari*, 276 F.3d 453, 460 (9th Cir. 2001). Plaintiff did not submit this alleged evidence or provide information specific enough to identify the evidence prior to the hearing or at the hearing. At the hearing, his counsel did not state that any records were outstanding. Tr. 41-42. Therefore, the ALJ reasonably inferred that there were no such records.

Additionally, the ALJ pointed to evidence in the record of Plaintiff's drug misuse and abuse as an indicator that Plaintiff's pain complaints may not be as severe as alleged. Tr. 24. For example, UDS testing noted alcohol, methadone, and benzodiazepines in Plaintiff's urine although Plaintiff was not prescribed any of those. Further, such testing was negative for oxycodone, even though Plaintiff was prescribed it. Tr. 20, 24, 25. Plaintiff's friend reported that Plaintiff was snorting his oxycodone and using heroine, methamphetamines, and cocaine. Tr. 25, 402, 718. A provider noted concerns of "diversion, possible abuse and unwillingness to comply" with the requested urine test and pill count to justify no longer prescribing opioids. Tr. 401-02. Additionally, Plaintiff testified that he last used methamphetamines a long time ago (Tr. 56-57, 60-61), yet he tested positive for methamphetamine as recent as 2016. Tr. 26, 636. A health care provider noted that he was adamant that he did not know how methamphetamine got in his urine for the 2016 test and was allegedly "begging" for pain medications. Tr. 636. These inconsistent statements and drug seeking behaviors support the ALJ's finding that Plaintiff may have been seeking medications for reasons other than disabling pain.

Finally, Plaintiff argues that the ALJ erred in rejecting his testimony regarding his mental impairments. However, the ALJ fully considered the evidence of Plaintiff's mental impairments, discussed them at length in his opinion, and provided clear and convincing reasons for why some subjective testimony was not entirely credible. For example, the ALJ noted that Plaintiff was never hospitalized for mental impairments, mental status examinations were largely normal, and

treatment notes showed normal mood and good sociability. Tr. 26. For example, despite Plaintiff's complaints of hearing voices, the ALJ noted there was no evidence of Plaintiff being distracted by internal stimuli. Tr. 26. Moreover, limitations arising from Plaintiff's mental impairments were addressed in his RFC by restricting him to essentially unskilled work with interactivity constraints. Therefore, plaintiff has not established harmful error in the evaluation of his subjective mental health testimony.

### III. The ALJ reasonably weighed the medical opinions of Dr. Kaper and Nurse Practitioner Herzog.

The ALJ is responsible for determining credibility resolving conflicts in medical testimony and resolving ambiguities. In social security cases, there are three categories of medical opinions: those that come from treating, examining, and non-examining doctors. *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2008). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Id.* at 1202. Opinions supported by explanations are given more authority than those that are not, as are opinions of specialists directly relating to their specialties. *Id.* An ALJ may properly reject a treating or examining physician's uncontradicted medical opinion only for "clear and convincing reasons." *Lester v. Chater*, 81 F.3d 821, 830-831 (9th Cir. 1995). When the treating or examining physician's opinion has been contradicted, the opinion may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). This can be done by setting out a detailed and thorough summary of the facts, providing an appropriate interpretation thereof, and making findings. *See Megallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ "need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and

inadequately supported by clinical findings." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002). Although this Court greatly respects the work and opinions of nurse practitioners, an ALJ needs to provide only a germane reason for discounting an opinion from an "other source," such as a nurse practitioner. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

Here, the ALJ summarized treating physician Dr. Kaper's opinion (Tr. 27-29) and provided specific and legitimate reasons for giving the opinion little weight. Although the Court finds the ALJ's reasons to also be "clear and convincing," the ALJ was required to provide only "specific and legitimate" reasons because Dr. Kaper's medical conclusions were contradicted by the opinion of another treating doctor, Dr. Dooley. Plaintiff argues that the ALJ "failed to explain why he discounted [Dr. Kaper's] report when it showed significantly improved IQ." Plf. Reply at 6. Dr. Kaper noted that Plaintiff exhibited poor and variable effort during testing and his ultimate scores were significantly inconsistent with those Dr. Dooley found. The ALJ gave specific and legitimate reasons for discounting Dr. Kaper's report, stating, "[Dr. Kaper] does not explain how the claimant could have had a significantly higher IQ in only about six months, with the claimant's scores on memory testing up 17 to 26 points in various memory domains . . . ." Tr. 29. The ALJ further noted that Dr. Kaper's opinion did not "comport with the claimant's absence of psychiatric hospitalizations during the relevant period, mental status examinations showing a normal mood and affect, treatment notes indicate good sociability, the claimant own reportage of psychosocial stressors rather than his underlying impairments account for his mental health symptoms and compromised effort on testing." Tr. 29. Not only are these reasons for giving little weight to Dr. Kaper's opinion specific and legitimate, the ALJ was not required to accept a medical opinion based on unreliable and inconsistent testing. *See Chaudhry v. Astrue*,

688 F.3d 661, 671 (9th Cir. 2012) (finding the ALJ properly rejected a medical opinion based on self-reports when the claimant exhibits poor effort on testing).

Regarding Nurse Herzog, the ALJ provided sufficient reasons to discount her opinion. Nurse Herzog's opinion does not qualify as a medically acceptable treating source because she is a nurse practitioner and the record does not show that she worked under a physician's close supervision. *See* 20 C.F.R. § 404.1513(d)(1); *Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996) (holding that a nurse practitioner could be considered a medically acceptable source where she worked under a physician's close supervision such that she acted as the physician's agent). The ALJ needed to provide only a germane reason for discounting Nurse Herzog's opinions provided in the mental impairment questionnaire and physical impairment questionnaire that she completed. The ALJ gave Nurse Herzog's opinion regarding Plaintiff's mental limitations little weight because it was not consistent with Plaintiff's "absence of psychiatric hospitalizations during the relevant period, mental status examinations showing a normal mood and affect, treatment notes indicate good sociability, the claimant own reportage of psychosocial stressors rather than his underlying impairments account for his mental health symptoms and the claimant's compromised effort on intelligence testing." Tr. 29. The ALJ further noted that her opinion was not consistent with the third-party statement of Plaintiff's friend who indicated that he has no mental health or intellectual difficulties. Tr. 29. The ALJ also gave Nurse Herzog's opinion regarding Plaintiff's physical limitations little weight because it was not consistent with the overall medical evidence record, including "an absence of surgery on the claimant's knees, no evidence of limitations in the use of hands, examination results showing negative McMurray and posterior/anterior drawer tests" as just a few examples. Tr. 30. Although Plaintiff argues that Nurse Herzog's opinions are consistent with other doctor's findings in the record, that is not

a sufficient reason to conclude that the ALJ committed harmful error in discounting Nurse Herzog's opinion. Applying the appropriate standard of review, the Court finds that the ALJ provided legally sufficient reasons for discounting both Dr. Kaper and Nurse Herzog's medical opinions.

### IV. The ALJ's RFC finding is supported by substantial evidence.

Plaintiff asserts that the ALJ's RFC determination is flawed by restating his arguments about the medical opinions provided by Nurse Herzog and Dr. Kaper. Because the ALJ reasonably discounted those opinions, he was not required to accept their proposed limitations when determining Plaintiff's RFC. The only new argument that Plaintiff asserts here is that the RFC is missing three of the moderate limitations Dr. Henry supplied—a limited ability to maintain adequate social functioning; a limited ability to maintain concentration, persistence and pace; and a limited ability to maintain adequate work attendance. However, Dr. Henry assessed Plaintiff's limitations and then rendered an opinion about what he could do despite those limitations and ultimately found Plaintiff could "manage brief, superficial interactions with a limited number of coworkers, and would be best doing simple tasks in an independent environment." Tr. 99. The ALJ's RFC determination is consistent with Dr. Henry's opinion as the ALJ found Plaintiff "limited to simple repetitive tasks" and "can have no public contact and no more than superficial coworker contact." Tr. 23. Therefore, the Court finds the ALJ did not commit error in determining Plaintiff's RFC.

### ORDER

Based on the foregoing and pursuant to sentence four of 42 U.S.C. § 405(g), the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

DATED this 20 day of February, 2019.

_____
MARK D. CLARKE
United States Magistrate Judge